Case is Todd and others v. Chaviano and others. Case 5-17-0081. Case 5-17-0081. Case 5-17-0081. May it please the Court, I'm Assistant Attorney General Laura Wunder. And I'm here on behalf of the Department and Director on this appeal. And I'd like to talk in broad strokes for a minute or two and then address more particularly what happened here. Co-appellant will also be addressing the Court today. As the Court knows, the procedural history of this case is lengthy and involves a lot of twists and turns. But the issue that the Department brings before the Court is actually narrow. We believe that this Court should modify the remedy ordered by the Circuit Court. And the problem with the Court's order as it relates to remedy is that it leaves in confusion exactly what the Department is supposed to do and what is supposed to happen going forward. The Court's order appears to abate what I call in my brief the 2014 administrative proceedings. And we believe that the Circuit Court was mistaken in that remedy. We ask that the Court order what we believe is the proper remedy that the ongoing 2014 administrative proceedings that were pending before the Department continue to their conclusion. But also and importantly, we're asking that whatever the Court orders here, the Court provide clear direction for the remedial action that should be taken going forward and how that relates to the underlying administrative proceedings. Given that there are a lot of moving parts here, there's multiple parties with competing interests, there's litigation in two forums, which we tried to have in one forum but we were unsuccessful. We believe that clear direction will go a long way toward avoiding further litigation and toward expeditiously resolving the whole matter. So let's take a look in more detail at the Court's order and why that leaves some of the matters in confusion. As this Court knows, the Circuit Court here set aside the Director's October 2015 decision. We don't agree with that, but we're not contesting it. And it ordered that the Department post these survey worker classifications and rates on its websites as set forth in consent decrees from 2013 and as in the ALJ's June 2015 decision. And then if you read the Circuit Court's order as a whole, it appears to contemplate that there will be no further administrative proceedings. So one of the matters in confusion is what the Department should post, because the order references both the 2013 consent decrees, the classifications from there, and the classifications from the ALJ's June 2015 order. But the consent decrees and the order say different things. The ALJ had held an evidentiary hearing, and based on the evidence, it expanded the classifications. The consent decrees deal with highways, highway construction. The ALJ's order expanded that to also include building construction and also added other substantive language about the context of the survey work. So there's some confusion there just relating to what is supposed to be posted. The order also creates confusion about the status of the matters at issue in the 2014 administrative proceedings. As I said, the Court's order appears to abate those proceedings, but it's not entirely clear. So the order appears to eliminate any further proceedings on the Coalition's objections to the survey worker classifications, which were part of these 2014 administrative proceedings. And the order appears to eliminate any further proceedings on the operators' objections about what the proper rates should be, which were also part of these 2014 administrative proceedings. We think that the Court's order was mistaken in abating those proceedings because they were ongoing and they had not yet reached a final resolution. So if the director's decision was invalid, then the resolution should be to proceed from where we were in the proceedings as if the invalidated decision hadn't issued. And we can look at that a little more specifically. Before this director's decision that was found to be invalid, this process had commenced. The 2014 administrative proceedings had commenced, objections by the Coalition and operators, all the interested parties were participating, all the various unions, the Coalition. The ALJ had had an evidentiary hearing and issued a decision and order, but that was not the final administrative step. Exceptions were filed by the Coalition and the operators. The matter went to the director for the final determination. The director says, well, no, you have to have this other process start over. That's a decision that was invalidated. So if we take that invalid decision out of the equation, the administrative steps that have yet to occur are a final administrative decision by the director on the exceptions, final administrative decision by the Coalition, and a final administrative decision by the operators. And that's followed by an opportunity for judicial review. So we believe that that is the appropriate remedy here. And we think that's a straightforward resolution and correct under the law. But as I said, we're also seeking clarity. The court's order leaves the status of these proceedings in confusion, leaves other matters in confusion, and we're seeking clear direction about what steps the department should take. The laborers don't supply any reason why the 2014 administrative proceedings shouldn't continue. They say, well, the director declared those proceedings null and void. But that was in the decision that was invalidated. So it's not helpful here to telling us what should happen going forward. And they also say, well, it was proper for the circuit court to reinstate, to say that these 2013 consent decrees were valid. But that doesn't resolve the question of the proper remedy, because if you accept that the consent decrees in 2013 were valid, it doesn't necessarily follow that the 2014 administrative proceedings must abate. And that's because the consent decrees weren't the end of the road. There were events that occurred after the consent decrees, and those still have to be accounted for. The consent decrees in 2013, then the classifications were posted on the website. But the relevant events don't stop there. Then the coalition filed objections to the classifications under Section 9 of the Act. The director at the time said, well, those objections appear untimely because you should have intervened earlier. But that's not the end of the road either, because then the coalition filed a lawsuit, went to Cook County Circuit Court. Cook County Circuit Court said, well, it looks to me like you should give them a hearing on their objections. There was a settlement agreement that the department entered into that said, okay, we will give the coalition a hearing on their objections. And that all led us into the 2014 administrative proceedings, giving the coalition a hearing. The operators also filed objections, so we're having these additional administrative proceedings. The laborers contend, and they get into this a bit more with the coalition, that, well, all the subsequent proceedings were improper. But they've never provided any persuasive reason why that's so. And at the end of the day, unless this court were to determine that those subsequent proceedings were improper, unless that happened, then it would seem that the appropriate remedy is to continue the administrative proceedings as if the director hadn't issued his decision. I'm nearly out of time, since I was putting the time at the appellate, but I'll just briefly address the other reasons the laborers raise are procedural flaws. They say, well, this is all waived. We don't believe the waiver doctrine applies here, because we are challenging an issue that only came about as the result of the circuit court's final order, and that wasn't an issue that arose until the final order. The remedy only came up in the final order. If waiver did apply, this Court has discretion to excuse waiver. That's appropriate here, because there are multiple parties with diverse interests, and there are good reasons to give the Department clear direction, which is really what it's looking for. And what the proper remedy should be is essentially a legal question.  We don't believe there are procedural impediments in the judicial estoppel and right of error arguments. None of those elements, this is addressed in the brief, and none of the elements of either of those doctrines are anywhere close to being fulfilled. So we don't believe there are procedural impediments, and for those reasons, we ask that the Court modify the circuit court's order. Thank you. Good morning, Your Honor. May it please the Court, my name is Andy Martone. I represent the coalition in this case, the attempted interveners. In this case, we are appealing the circuit court's denial of our petition to intervene, based on an abuse of discretion by the trial court. Specifically, under Rule 2-408A, an intervention should be liberally allowed if three conditions are met. The first condition to be met is that the application had to be made on a timely basis. I don't believe there's a dispute about the fact that we met this element, because we applied within a month of the underlying proceedings initiation. The second thing that must be met for purposes of intervention is representation by the existing parties is inadequate. That element is clearly met in this case. Very simply, the Illinois Department of Labor is not representing my client's or my client's interests. I'm the only attorney who's been in this process the entire way through, from 2013, Your Honor. So I'm going to kind of walk through the process, because I think there are several parts of the record that have been left out or not necessarily addressed as thoroughly as they should be. But in this case, for example, my clients do not agree that the director of the Illinois Department of Labor's determination was an abuse of discretion and should be overturned. We do not agree. We think that the director's decision was correct, and we would have propounded that position in the trial court. And the fact that the Illinois Department of Labor disagrees with us shows they are not representing our interests. In addition, the Illinois Department of Labor was the adverse party to us in the underlying administrative proceeding and in the Cook County proceeding. Under the Argonaut case, if there's even an arguable conflict, then existing parties does not adequately represent the interests of the proposed intervener. In this case, there's not a potential conflict of interest. They were an opposing party. And so clearly they're not representing our interests. In fact, the settlement agreement that counsel referenced is a settlement agreement between us and the Illinois Department of Labor that specifically promises that the surly worker classification, which was established by the 2013 consent decree, would not be published until the administrative proceeding completes. And so in this case, my client's interests are not being represented. And finally, the third criteria for purposes of intervention are that we would be bound by or prejudiced by the decision. Your Honors, we are participating in an administrative proceeding that will determine whether surly workers should be covered under the Illinois Prevailing Wage Act. If the lower court's decision is upheld in this case, that proceeding will grind to a halt. And essentially, a trial judge will be allowed to circumvent the administrative process of the Illinois Department of Labor. We will be bound by that decision, and we will be prejudiced. In addition to that, we are participants in the Cook County proceeding, which is the mere proceeding that was actually filed before the St. Clair County case, Your Honors. And again, the Cook County court has stayed that action pending the resolution of this case. So we will lose our rights in that case if the court decides that your decision is registered to COTA. Clearly, all three elements of intervention by right have been met. And in this case, the trial court abused its discretion when it decided otherwise. Your Honors, this case is about whether survey workers should be covered by the Illinois Prevailing Wage Act. Prior to 2013, they were not. They were covered by the Illinois Professional Land Surveyors Act. And a survey worker is exactly what it sounds like. It's someone who uses sophisticated survey material to survey a site. In 2013, plaintiffs in this case and Operators Local 150, a union in Chicago, filed objections to a prevailing wage determination that did not include survey workers. And in that case, what they did was they reached a consent decree with each other and with, I guess, blessed by the Department of Labor and the administrative law judge. That's not the way the statute works. Under the Illinois Prevailing Wage Act, Your Honors, there are two components. Component number one, under Section 4 of the Act, requires that the Department conduct an investigation. Component number two is contained in Section 9 of the Act, Your Honors. And this is how Section 9 explicitly works. Under Section 9 of the Illinois Prevailing Wage Act, after the Department of Labor has concluded its investigation, it will publicly post the prevailing wage rates on its website. Prior to the time of that posting, nothing is appealable, either at the administrative level or the judicial level. There's nothing to appeal. And so there can be no waiver by not appealing the consent decrees because the consent decrees were annullity until the time they were posted. And when those consent decrees were posted, we, the coalition and my clients, filed timely objections. When a timely objection is filed under Section 9 of the Illinois Prevailing Wage Act, the IDOL has a duty to hold a hearing on that issue, to accept the evidence that went into the investigation, and also to allow us to enter evidence. The posting is the first opportunity for us to file objections and enter evidence. We filed a timely objection, but the Illinois Department of Labor refused to grant us the statutorily required Section 9 hearing, saying that we should have been able to participate in the earlier procedure. Well, until they posted the survey worker classifications, we were not agreed. There was no reason to appeal. And so we followed the statute to the letter. The Illinois Department of Labor disagreed, summarily dismissed our objections, and we went to Cook County Circuit Court to seek both review and injunctive relief. The Cook County Court and Chancery granted us our injunctive relief and said, the survey worker classification will not be posted until the administrative process is complete. Your Honor, in this case, Judge Lesheen's order requires the Department of Labor to post the survey worker classification. That's what they're trying to do in this case. And so in doing so, they're trying to essentially force the Illinois Department of Labor to ignore both the Cook County Chancery Court's ruling on the injunction, to ignore our settlement agreement, which provides that these rates will not be posted until the administrative process is complete, and to ignore the fact that the administrative process is not complete. What happened then, Your Honors, after Cook County sent us back to the Illinois Department of Labor, we had a Section 9 hearing. Plaintiffs in this case participated in that hearing. As participants, the parties heard evidence, and at the conclusion of the hearing, the Administrative Law Judge, Judge Haggerty, issued a preliminary decision at the request of the parties. And his preliminary decision was to modify the category of survey worker. And in his decision, Judge Haggerty explicitly said, I am now certifying this for the parties to file exceptions to the Director of the Illinois Department of Labor, which is the final process in the administrative process. We file objections. The unions, the operator's union, filed objections, called exceptions. Director Schiaviano found in our favor. He upheld the fact that in containing our exceptions, he had argued that we were deprived of an investigation as required by Section 4 of the Illinois Prevailing Wage Act. And so the Schiaviano decision, which the laborers disagreed with and contend was an abuse of discretion, and which the Illinois Department of Labor has failed and refused to defend, was correct. And in that case, we won. And so the Director simply ordered that a Section 4 investigation be held before anything was to be decided and posted, which is exactly what he's supposed to do under the statute. Your Honor, because we were not allowed to intervene, if this decision is upheld, we will lose our right in Cook County to challenge the determination up there, and we will also be ejected from an administrative procedure that has not even been completed. There can be no clear reason why we should be permitted to intervene in this case, and the judge abused his discretion when he refused it. Your Honor, do you have any questions? Thank you. May it please the Court. My name is Ellen Schanzel-Haskins, and I represent the Midwest Laborers, which is a labor organization that includes 93 counties in Illinois. That's southern, central, and portions of northern Illinois. I also represent Mike Todd, who is the Plaintiff Appellee in this case, as well as Laborers Local 459 in Belleville, Illinois. Counsel. This case is very complicated procedurally. However, the case that was before the St. Clair County Court is very simple. We asked for the reinstatement of officially adopted 2013 consent decrees that were entered procedurally correctly and adopted by the Illinois Department of Labor in September of 2013 and were posted on the website in 2014. Now, I need to mention that when the prevailing wage rates are set for the whole state, that is a Section 9 proceeding, and that is a once yearly proceeding. And that's important because your right to a Section 9 hearing comes about once a year, and that's when the posting of the prevailing wage rates for the whole state are made. Now, in this particular case, the classification of survey worker was adopted correctly through an administrative law judge, the Illinois Department of Labor director, and staff of the Illinois Department of Labor in 2013, and it provided for a classification for survey work and survey foreman, which was laborer's work at laborer's wages. Now, laborer's wages are less than most of the prevailing wage rates, such as operating engineers or plumbers and that kind of thing. And laborers have traditionally been those people in the field who do the survey work. They do everything from grade checking, staking, laying out the construction site, using GPS, et cetera. So this has been our work traditionally. And in 2013, the classification was properly adopted. Now, subsequent to those events, the coalition chose to try to go to the circuit court, or they did go to the circuit court in Cook County and tried to undercut the classification. That is not before this court. That was not briefed in detail in this case, and it was not part of our prayerful relief. Our prayerful relief is based on the fact that in 2014, there was an administrative procedure in the Department of Labor, and it had to be there in 2014 because when the July 2014 statewide prevailing wage rates were posted, if you wanted to object, you had to object. You didn't have a choice. That was your only remedy. And so the 2013 classification was the law of the land from October of 2013 through July of 2014. In July of 2014, the Department of Labor posted the classification. They struck through it and said not in effect. So at that point, since this was Labor's work, Labor's classification, we had to do something with a Section 9 through the Department of Labor in order to exhaust our administrative remedies, and that's what we did. So we filed in the Department of Labor, as did the coalition and several other entities, and we ended up having six days of hearings with 1,000 documents, 1,000 pages of transcripts, 17 witnesses. And at the end of that hearing, the administrative law judge for the Illinois Department of Labor basically affirmed that the 2013 consent decrees and prevailing wage classification that had been entered on behalf of the laborers was correct and appropriate. And at that point, a new administration came in to the Department of Labor and gutted the administrative law judge's decision. Basically threw it out, said that there should never have been a formal proceeding. You don't get a formal Section 9 proceeding. You can only go to an informal Section 4 proceeding. Now, what does an informal Section 4 proceeding mean? That means that you don't have any rights anymore. You don't have an administrative law judge. You don't have a formal hearing. In the testimony at the trial, it was indicated that all of the transcripts from all the proceedings in 2014 were abandoned and were not going to be able to be used because we had to go back to the department and we had to go through an informal process which allowed us no administrative review, no witnesses, no testimony, no nothing. So in other words, the coalition and the Department of Labor basically gutted the classification through the 2014 proceedings. We then asked the department for an appeal and we were denied. We had no choice at that point. We had lost our classification. We had lost our survey worker wage, and we filed this case in St. Clair County. Now, Mr. Martone says that a case was filed in Chicago before ours, and I know that you know from the record that the judge in Chicago in that case has ruled that these are not the same cases, not the same parties, and we were not, the laborers were not under the jurisdiction of the Cook County Court. So therefore, both cases could go forward. That same holding was made by Judge Lesheen in St. Clair County earlier. Then the Attorney General attempted to appeal this to the Illinois Supreme Court with a 384 request that the St. Clair County case be transferred to Cook County. The Supreme Court denied that, and then the coalition went to the Cook County judge and asked that we be enjoined from going forward in St. Clair County. The Cook County judge said, no, I'm not going to enjoin the St. Clair County case because they're not the same case and the same parties. What I'm going to do is I'm staying my case because if the St. Clair County judge rules that the 2013 consent decrees are good and valid and are reinstated, then that might moot the case up in Cook County. But that's another matter that is not before this court, and it was not before Judge Lesheen. Judge Lesheen granted the laborers what we asked for. We asked that the consent decrees which were properly established or never appealed were the law of the land for 10 months until the yearly posting, that they should be reinstated and that the laborers' rates should be the rate as pursuant to the consent decrees. We were trying to enforce the consent decrees. We were not discussing the 2014 proceedings before the department because those were null and void, and the assistant attorney general indicates that those matters are ongoing. If they are ongoing, they're only ongoing in the Cook County case. But the fact is that the attorney general and the Department of Labor have waived their argument with respect to whether Judge Lesheen erred in not returning this to the 2014 proceedings instead of reinstituting the 2013 consent decrees. Now, if you look at the record here, during the course of these proceedings, the department at the trial court, they waived this issue and they engaged in invited error. At the trial court, they said in their answer to the complaint that the 2014 proceedings were null and void because Director Shabiano declared them as such. So they're gone. So how is the trial court supposed to return the case to something that's null and void? I think that's not possible. They continued to assert at the trial court, throughout the trial court, not that we should return this case to the 2014 proceedings because those were null and void. No, they asserted that Shabiano acted within his discretion in voiding these proceedings and that we had to go back to the informal process with no due process, with no administrative review, and go through that again. We had spent six days of hearing in this case to try to get a resolution, and it was gutted. And I believe that the law of waiver is very clear here. And indeed, I believe invited error is also clear. Invited error is when a party may not request to proceed in one manner and then later contend on appeal that the course of action was an error. That's a Chalupski case that I cited in my brief. And that's what happened here. Now, I understand that there is concern about where do we go from here. And we do appreciate the fact that the Department of Labor has now acknowledged that Director Shabiano's actions were arbitrary and capricious, or at least that they were not proper. And they have not appealed that issue. So the standard of proof at this juncture should be, because it's only a question of choice of remedies, I believe that it should be abuse of discretion. I don't believe that there's any possibility that Judge Lasheen abused his discretion. If you read his very lengthy opinion in this case, it was very well thought out. And he says in that opinion that regardless of what Shabiano did, the 2013 consent decrees are still intact, and they should be implemented because they've never been revoked. He also noted in his opinion that it was improper for the judge in Cook County in 2013 to stay the classification. But we did not address that issue. It is in his footnote, however, if the court cares to look at it, the record at 910. On the question of what should we do at this point, Your Honor, I think it's very simple. I believe that Judge Lasheen was correct in reinstating the 2013 consent decrees. I believe he was within his sound discretion in doing so. And this argument now made by the Attorney General that there's some issue about what the rate should be is very simply solved. And the court can take judicial notice of the fact that on August 15th of 2018, this year, the Department of Labor posted the 2018 prevailing wage rates. They posted it all over the state for all crafts, including the craft of laborers. The only direction that really needs to come is to affirm the trial court on the basis of labor, invited error, et cetera, and take judicial notice of the 2018 prevailing wage rates and remand it to the trial court. Of course, Judge Lasheen is now deceased, so we'll have to go to a different judge. But remand it to the trial court with instructions that they post it back on the prevailing wage survey on the website at the 2018 laborers' rates. That's what the consent decrees say. The question of whether or not there was an issue with regard to there being some confusion on in 2014, that confusion has been relieved. We entered into a stipulation before the St. Clair County Court so that the St. Clair County Court was well aware that there was an error in the administrative law judge's opinion in 2014, and that error was going to be corrected and everyone agreed. As to the question of the intervention by the coalition, I believe that the coalition has demonstrated to the court that they actually don't have an interest in this matter and should not have been allowed to intervene. If we look, there were actually two hearings on intervention in the trial court. The first one came about on January 6th of 2016. Right after the case was filed, the coalition attempted to intervene. And when they intervened, they said they were intervening to support the nullification of the classification by Director Schiaviano. In other words, they were trying to weigh in to support the Illinois Department of Labor. Well, I don't believe under intervention as a right or discretionary intervention that you don't get to just weigh in and support someone. And particularly in this case where the Attorney General represents the Department of Labor and they did a very, very adequate job. In fact, all of the issues that the coalition wanted brought forth ended up being fully litigated in the St. Clair County case. And those that weren't, I'm sorry, and not only were they litigated in the St. Clair County case, but they were also litigated before the Illinois Supreme Court, or at least there was a request for a 384 finding. And they were also litigated before the Cook County Court. So the issues that the coalition wants to intervene to raise have to do with whether our case should have been dismissed or should have been transferred to Cook County. Those have been reviewed by three courts now and all denied. So the Attorney General did a masterful job of representing the Department of Labor on all those issues and also interests of folks like the coalition. When the court asked at the first intervention what the coalition, this is a question to the coalition's attorney, what is your position on the 2013 consent decrees? What they said was, we are not challenging the 2013 consent decrees. Mr. Justices, the entire case of the laborers was about the 2013 consent decrees and the fact that the Director of the Department of Labor acted arbitrarily and capriciously. So that was our whole case. And they admitted, and it's in the record, that they were not, the coalition was not challenging the 2013 consent decrees. They said instead that the reason they wanted to intervene is because they didn't want to have to pay survey workers. They didn't want to have to pay the increased rate. That's what they said. The Illinois Prevailing Wage Act is there to support workers to get a fair wage and also to protect Illinois contractors. The reason for the Prevailing Wage Act was to keep out-of-state contractors from coming into Illinois and undercutting with cheap labor Illinois contractors. So the reason we have a Prevailing Wage Act is because all workers, either union or non-union, regardless, have to be paid the same. In their brief, the Attorney General indicated that we show no prejudice. The laborers show no prejudice. I would direct the Court's attention to Appendix C to our brief, which is an affidavit of Glenn Ramage, who is the head of 12 counties in southwestern Illinois for the laborers, and he indicates that in the time period that the actual classification was published, that the laborers did 25,000 hours of survey work. We would ask the Court to affirm the decision of the trial court. Thank you. Thank you, Counsel Rebetto. Thank you, Your Honors. And I will try to be very brief here as I am splitting the time as well with the Court Counsel. Counsel has raised the issues again of waiver and invited error, and we believe that those documents should not apply here to prevent the Department from asking this Court to order the proper remedy in this case. Again, Counsel goes back to the idea that the Director's decision that was invalidated said that these administrative proceedings were null and void. In the Circuit Court, the Department defended the Director's decision that a new proceeding under Section 4E was what had to occur here, and we don't agree that that is incorrect, but we have determined not to contest it. On appeal, the Department has, in response to the Circuit, the Circuit Court disagreed with us and said that decision is invalid. So our position then is accepting that that is the case, here is what the correct remedy should be, that the 2014 proceeding should continue. That's logical, it's consistent, it is narrowing our arguments in response to the Circuit Court's reversal. That doesn't create issues of waiver or invited error. Additionally, Counsel said, well, this is a choice of remedy question. We don't believe that's correct. There is a legally correct way to proceed. There are factual scenario, there's statutes, regulations, this is a question, a legal question of applying the law to the facts. It's not a choice of remedy, like should there be a 10-day suspension or a 15-day suspension. That would be more of a discretionary area for the Court. Counsel has also suggested that, well, there aren't so many problems because the rates can change from year to year and there can be no postings, but the operator's challenge here wasn't just seeking an update of rates, it was saying that the rates should be the rates for a different union. So there is still those objections and the resolution of those objections is unclear. Counsel suggested that the St. Clair County Court was aware of some other problems in its order and was maybe going to correct that. No, that's the case. We have the order and what we're seeking here is clarity on what should happen now going forward. Counsel also says, well, we got what we asked for. We wanted these consent decrees to be declared valid. And, again, that doesn't say, concluding that the consent decrees are valid doesn't tell you what should happen now to the 2014 administrative proceedings because those started up on objections. And just because the consent decrees were valid, it doesn't necessarily foreclose subsequent objections and the subsequent proceedings. And all those proceedings are more in detail in the record. And so we ask that the Court modify the order with the correct remedy. Thank you. Your Honors, I'll be brief because I have to be. Four corrections I need to make. Correction number one, the survey worker rate is not equal to the laborer rate and this Court could not simply lift the laborer rate as counsel suggests and call it the survey worker rate. If you review the record at C-21 through C-38, survey workers are a separate category of worker. And so for this Court to fashion a remedy, you would essentially have to both A, order the IDLL to post the survey worker rate, but then come up with a survey worker rate of your own. In other words, the Court would have to intervene and make that determination. You can't just lift it from another category of worker. That's not what the Act says. And so literally the lower court's ruling can't be enforced as it is. Second correction, Director Schiaviano did not void the 2014 proceedings. Now I'm on the record at page C-65 through C-66, Your Honors. Director Schiaviano voided the June 12, 2015 decision and order of an administrative law judge. That's all he voided. He didn't void the entire proceeding. He said, and I quote, Go back and do the Section 4e hearing you're statutorily required to do. Then and only then come back for a Section 9 hearing because the consent decree skipped a step under the law. The idea was for us to investigate. All right. Thank you, Counsel, for your arguments. The Court will take this matter under advisement and enter a decision.